**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

MATTHEW RUSSELL LEE,       :

                   :       Case No. 26-cv-4556

        Plaintiff,      :

                   :       **COMPLAINT FOR INJUNCTIVE RELIEF**

    -against-         :

                   :

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM:

                   :

      Defendant.    :

                   :

---------------------------------------------------------X

Plaintiff Matthew Russell Lee alleges as follows:

**INTRODUCTION**

1.     This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), to compel the Board of Governors of the Federal Reserve

System (the "Board," FRB" or the "Fed") to disclose records concerning its review of the application for regulatory approval by Enova International, Inc. and its high-cost payday lender CashNetUSA to acquire Grasshopper Bank.  The Board has fully redacted its Feb 4, 2026 eight-page Additional Information letter to Enova, unlike on other past application, such as that of Fifth Third to acquire Comerica.

1.      In response to a February 4, 2026 requested under the Freedom of Information Act for Inner City Press, Fair Finance Watch and personal capacity (Exhibit A), the Board issued a FOIA denial on February 24, 2026 along with a nearly entirely redacted copy of the AI letter (Exhibit B).  After an immediate FOIA appeal (Exhibit C), the Fed on April 10, 2026 issued a total FOIA appeal denial (Exhibit D).  This action seeks to compel the disclosure FOIA was enacted to require.

**PARTIES**

2.      For Inner City Press since 1987 I Matthew Russell Lee have reported on predatory lending and the Federal Reserve. See generally www.innercitypress.org/frreport.html and the book "Predatory Bender: A Story of Subprime Finance with non-fiction afterward" and more recently, "Banking on Dictators: The UN and BNP's Sudan Sanctions Trial," https://www.amazon.com/Banking-Dictators-Sudan-Sanctions-Trial-ebook/dp/B0FWTSDM7L.  See also the information to the public daily through

2

articles published at innercitypress.com, posts on the X platform under the handle @innercitypress, as well as Bluesky, Threads, Patreon and Substack.

3.      I am recognized as a representative of the news media by the City of New York, the International Monetary Fund, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation - and the Federal Reserve, each of which has granted FOIA expedited treatment and fee waivers in connection with a sustained practice of seeking First Amendment access to federal judicial records and proceedings, a practice the Second Circuit recently recognized. *See Lee v. Greenwood*, 145 F.4th 248, 254 (2d Cir. 2025) (holding that the First Amendment qualified right of access attaches to exhibits, and that wholesale sealing without specific, on-the-record findings is constitutionally inadequate).[1]

4.      Defendant Federal Reserve Board, among other statutory duties, is the primary regulator of bank and financial services holding companies and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

### JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

---

[1] The Second Circuit's reasoning in *Greenwood*—that categorical denial of public access cannot substitute for document-by-document analysis—applies with equal force to the categorical denial of FOIA disclosure that is the subject of this action. *See* 145 F.4th 248, 254.

3

6.    Venue lies in this District under 5 U.S.C. § 552(a)(4)(B).

## STATUTORY FRAMEWORK

7.    FOIA confers upon members of the public a statutory right of access to agency records. The statute provides that, upon a request reasonably describing the records sought and made in accordance with published agency rules, the agency "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

8.    The statute prescribes nine exemptions from disclosure. *Id.* § 552(b). The exemptions "are to be narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). The agency bears the burden of justifying any withholding by demonstrating that the records fall within a specific exemption. 5 U.S.C. § 552(a)(4)(B).

9.    Under the FOIA Improvement Act of 2016, an agency may not withhold information "unless" it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). Mere identification of an applicable exemption does not satisfy the agency's burden.

10.    FOIA further requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Wholesale withholding without

4

segregability analysis is not authorized. *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## THE BOARD'S CLAIMED EXEMPTIONS AND THEIR DEFICIENCIES

11.   **Exemption 4 — Confidential Commercial or Financial Information**

12.   The Board invoked Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4), to withhold the entirety of the substantive content of both Additional Information letters. The Board's appeal denial relied on *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019), for the proposition that commercial or financial information is "confidential" if it "is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy."

13.   The Board's application of Exemption 4 is overbroad in at least three respects. First, the questions contained in an Additional Information letter are the Federal Reserve's own questions — they are not Enova's commercial or financial information. They reflect the Board's regulatory judgment about what issues require clarification, and that judgment is the agency's, not the submitter's. A question asked by a regulator does not become the submitter's trade secret merely because the answer might implicate business information. The Exemption 4

5

analysis the Board conducted conflates the Board's questions with Enova's answers. Second, even as to Enova's unredacted responses (which Inner City Press also seeks), the Board must demonstrate that each specific piece of withheld information was "customarily and actually treated as private." A categorical assertion that all information in an application process is confidential does not satisfy *Food Marketing*'s requirement of a specific, document-by-document showing. Third, the Board's invocation of a "chilling effect on the cooperation between submitters and regulators" as a basis for withholding is not a recognized Exemption 4 ground under current law. *Food Marketing* replaced the prior "substantial harm to competitive position" test with the customary-and-actual-treatment standard; a speculative chilling effect on regulatory cooperation is not among the interests Exemption 4 protects. See *Argus Leader Media v. U.S. Dep't of Agriculture*, 889 F.3d 914, 918 (8th Cir. 2018) (pre-*Food Marketing* analysis noting the narrow scope of the exemption). See also May 8, 2026, Detroit News, "Fifth Third to lay off hundreds at former Comerica campus," by Candice Williams, "About 55 Comerica branches and 21 Fifth Third locations in Michigan are expected to close, according to documents posted by Fair Finance Watch, obtained under the Freedom of Information Act," https://www.detroitnews.com/story/business/2026/05/08/fifth-third-to-lay-off-502-workers-at-former-comerica-campus-following-merger/89998064007/ and Exhibit D.

14.    **Exemption 5 — Deliberative Process and Attorney-Client Privilege**

6

15.    Although the Board did not invoke Exemption 5 in its initial denial or appeal denial letters, it is anticipated that the Board may seek to rely on Exemption 5 — the deliberative process privilege and/or attorney-client privilege — in any Vaughn index it produces in this litigation. Plaintiff addresses this exemption preemptively.

16.    Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The deliberative process privilege protects predecisional documents reflecting the agency's deliberative processes. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975). The exemption does not protect purely factual material that is reasonably segregable from protected deliberative content. *EPA v. Mink*, 410 U.S. 73, 91 (1973).

17.    The Additional Information letters at issue here are not intra-agency memoranda. They are letters sent by the Federal Reserve Bank of Chicago to Enova's counsel at Covington & Burling — they crossed the agency boundary and entered the hands of a private party. An inter-agency or intra-agency privilege does not attach to documents transmitted to regulated entities outside the agency. The D.C. Circuit has repeatedly held that once a document leaves the agency and is shared with an outsider, the deliberative process privilege is waived as to that document. *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242,

254 n.25 (D.C. Cir. 1977). The Board cannot assert Exemption 5 for letters that are already in Enova's possession.

18.    **Exemption 6 — Personal Privacy**

19.    The Board invoked Exemption 6, 5 U.S.C. § 552(b)(6), to withhold "nonpublic personal information (such as sensitive personal biographical and financial information of individuals)" from the Additional Information letters. The Board's appeal denial confirmed that Exemption 6 was applied to portions of the withheld material, citing the names and personal information of individuals contained in the application documents.

20.    Plaintiff does not dispute that the names and personal identifying information of private individuals — such as bank officers and employees identified in the application — may warrant Exemption 6 protection. However, Exemption 6 does not justify the wholesale withholding of the substantive content of eight-page and three-page regulatory letters. The question of what regulatory concerns the Federal Reserve had about Enova's payday lending history, consumer protection record, and plans for Grasshopper Bank is not "personal" information about any individual. It is the Board's own regulatory analysis. Exemption 6 is calibrated to protect individuals from "clearly unwarranted invasion[s] of personal privacy," *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982) — not to shield the regulatory concerns of a federal bank regulator about a publicly traded

corporation. The proper remedy for any legitimate Exemption 6 concerns in the AI letters is targeted redaction of individual names and identifying details, not blanket suppression of the Board's regulatory inquiry

## FACTUAL BACKGROUND

21.　In December 2025 Enova, the owner of payday lender CashNetUSA, announced a proposal to acquire Grasshopper Bank for $369 million, and said it would be consummated in the second half of 2026. See, e.g., Alternative Credit Investor, December 12, 2025, "Fintech lender Enova acquires digital bank to scale US loans," https://alternativecreditinvestor.com/2025/12/12/fintech-lender-enova-acquires-digital-bank-to-scale-us-loans/

22.　The proposal acquisition, which would allow a payday lender into the banking system and has been opposed by at least two U.S. Senators, required Federal Reserve Board approval. Enova applied, and on January 31, 2026 Fair Finance Watch filed opposition, stating inter alia that "[t]o allow a payday lender already fined by the CFPB to become a bank holding company would be a new low for the Fed.　For the record on this application:　'The Consumer Financial Protection Bureau (CFPB) has ordered online lender Enova International Inc. to pay a $15 million penalty for what it said is "widespread illegal conduct," including withdrawing funds from customers' bank accounts without their permission, making deceptive statements about loans, and cancelling loan

9

extensions.  This isn't the first time Enova has been fined. The company paid a $3.2 million penalty to the CFPB in 2019, and was ordered to cease its illegal conduct, the Bureau said...The CFPB investigated Enova's compliance with the 2019 order. The investigation found that the company was continuing to engage in illegal behavior, affecting more than 111,000 consumers," according to the CFPB.' Specifically, the CFPB said it found in its additional investigation that Enova: Withdrew funds without borrowers' consent. "Enova withdrew or tried to withdraw funds from consumers' accounts without having obtained their express informed consent as required by the 2019 order," the CFPB said. "In some cases Enova used bank account information it had purchased from online lead generators, overwriting the bank account information that borrowers had authorized Enova to use." Backtracked on loan extensions. "Enova cancelled loan extensions it had granted to certain consumers and in most instances debited such consumers' bank accounts for the full loan payment instead of only a smaller loan extension fee, in violation of the 2019 order." Deceived borrowers with false statements and omissions. "Enova failed to tell consumers who had been granted a loan extension that making an interim partial payment would result in cancellation of the loan extension and misrepresented the amount that Enova would charge to consumers who made such an interim partial payment," the CFPB said. "Enova also misrepresented the due date for certain loan payments, that consumers could skip

certain loan payments, and the amounts due on certain loans.'" Now they want (to become) a national bank? Public hearings are necessary.   Combine this with Grasshopper's use of artificial intelligence in banking - a topic not yet scrutinize enough by the regulators, see for example Fifth Third and Brex, with Brex now being acquired by Capital One - and the need for public hearings on this CashNetUSA/Enova - Grasshopper (AI) proposal is all the more clear."

23.     On January 24, 2026 and February 2, 2026 the Fed as it does posed Additional Information questions to Enova, presumably about any consumer protection safeguards given CashNetUSA's interest rates and practices. Enova was told to send copies of its responses to Fair Finance Watch as a formal protestant to the application.

24.     The Fed's February 2, 2026 Additional Information letter, as sent to Fair Finance Watch, had all of the substance withheld. On February 4, 2026 Inner City Press for its reporting filed a FOIA request for both Additional Information letters. The request was, as directed by the Fed, filed through the agencies online portal, as reproduced as Exhibit A.

25.     The Board issued a FOIA denial on February 24, 2026 along with a nearly entirely redacted copy of the AI letter (Exhibit B).

26.     After an immediate FOIA appeal (Exhibit C), the Fed on April 10, 2026 issued a total FOIA appeal denial (Exhibit D).  This action seeks to compel

the disclosure FOIA was enacted to require. All administrative remedies available under FOIA have been exhausted. 5 U.S.C. § 552(a)(6)(A)(ii).

## FIRST CAUSE OF ACTION
*Violation of FOIA, 5 U.S.C. § 552*

27.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

28.    Plaintiff has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to obtain the records he has requested. There is no legal basis for the Federal Reserve Board's denial of that right.

29.    The records sought are agency records within the meaning of 5 U.S.C. § 552(f)(2) and are in the possession, custody, or control of the Federal Reserve System.

30.    The Fed's in-full denial accordingly constitutes the improper withholding of agency records within the meaning of 5 U.S.C. § 552(a)(4)(B), entitling Plaintiff to injunctive relief compelling production.

## SECOND CAUSE OF ACTION
*Violation of FOIA's Expedited Processing Requirement, 5 U.S.C. § 552(a)(6)(E)*

31.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

12

32.    FOIA requires expedited processing of requests if the requester demonstrates a "compelling need" for the materials. 5 U.S.C. § 552(a)(6)(E)(i). A "compelling need" encompasses requests "made by a person primarily engaged in disseminating information" that relate to an issue to which there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II). Expedited processing is also appropriate where there is "widespread and exceptional media interest" in the matter that presents "possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

33.    Plaintiff is "primarily engaged in disseminating information" within the meaning of 5 U.S.C. § 552(a)(6)(E)(v)(II), as set forth in paragraphs above.

34.    There is an "urgency to inform the public concerning actual or alleged Federal Government activity" with respect to the records sought: the Federal Reserve Board's review of a proposal by the parent of a high-cost payday lender to buy a bank and become a bank holding company.

35.     The Fed granted Plaintiff's request for expedited processing.

36.    Notwithstanding the grant of expedited processing, the Fed has failed to process Plaintiff's request "as soon as practicable" within the meaning of 5 U.S.C. § 552(a)(6)(E)(iii). Specifically:

13

a.    the Fed has produced essentially no records in response to Plaintiff's request.  The Fed's February 24, 2026 denial of the request, constructively in full, did not constitute processing "as soon as practicable" because, as set forth in the First Cause of Action, the denial substituted categorical refusal for the substantive processing the statute requires;

b.    the Fed has therefore rendered Plaintiff's grant of expedited treatment meaningless by substituting categorical denial for the prompt processing the statute requires; and

c.    the application remains pending but the applicant has said it anticipates consummating the proposal in the second half of 2026 - that is, having the Fed's approval before then. That should not happen until the records required to be given under FOIA and request on February 4, 2026 are belatedly provided.

37.    The Fed's failure to process Plaintiff's request "as soon as practicable" violates 5 U.S.C. § 552(a)(6)(E)(iii) and entitles Plaintiff to an order compelling the Fed to complete its processing of the narrowed request and produce all non-exempt records on an expedited schedule, prior to any approval of the application.

38.    This Court has jurisdiction to grant such relief under 5 U.S.C. § 552(a)(4)(B), which provides that the district court "has jurisdiction to enjoin the

agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Expedite this action in every feasible manner, pursuant to 28 U.S.C. § 1657(a);

B.    Declare that Defendant's withholding of records responsive to FOIA Request No. FOIA2026-00297 violates 5 U.S.C. § 552(a)(3)(A), and is unsupported by the administrative record;

C.    Declare that Defendant has failed to process Plaintiff's request "as soon as practicable" in violation of 5 U.S.C. § 552(a)(6)(E)(iii);

D.    Order Defendant to conduct an adequate search for records responsive to Plaintiff's request

E.    Order Defendant to produce all non-exempt records and reasonably segregable portions thereof on a rolling basis and on an expedited schedule, consistent with Defendant's grant of expedited processing and the public-comment and review periods;

F.    Order Defendant, with respect to any continued withholding, to provide Plaintiff and the Court with a detailed *Vaughn* index addressing each withheld document or portion thereof, identifying the specific FOIA exemption

claimed for each, and providing the factual and legal basis for the claimed

exemption with sufficient specificity to permit meaningful judicial review;

G.    Enjoin Defendant from withholding records responsive to Plaintiff's

request except as authorized by specific, on-the-record findings supported by the

*Vaughn* index;

H.    Award Plaintiff his costs and reasonable attorney's fees incurred in

this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

I.    Grant Plaintiff such other and further relief as this Court deems just

and proper.

Matthew Russell Lee
Inner City Press
P.O. Box 130222
Chinatown Station
NYC NY 10013
718-716-3540
Matthew.Lee@innercitypress.com

Dated: May 30, 2026